UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FELIX ESPOSITO ) | |
| and ACCESS WITH SUCCESS, INC., ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO.: 05-10349WGY |
| 29 HANCOCK STREET, LLC, ) | |
| ADAMS INN FACILITIES, INC. ) | |
| Defendantss ) | |

## CONSENT DECREE

This CONSENT DECREE is made and entered into by and among Access With Success, Inc. and Felix Esposito, acting by and through their attorney, Nicholas S. Guerrera, Shaheen, Guerrera & O'Leary, L.L.C. (hereinafter the "plaintiffs"), and 29 Hancock Street, LLC and Adams Inn Facilities, Inc., by and through their attorney, Michael R. Coppock, Rubin and Rudman, LLP (hereinafter the "defendants"). (Access with Success, Inc., Felix Esposito, and 29 Hancock Street, LLC and Adams Inn Facilities, Inc. are sometimes hereinafter referred to as the "Parties").

### WITNESSETH:

WHEREAS, the plaintiffs filed this action against the defendants for alleged violations of Title III of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.*, and Article 114 of the Massachusetts Constitution, and Massachusetts General Laws, chapter 93 § 103 pursuant to which the plaintiffs sought a permanent mandatory injunction, damages and attorneys' and expert's fees, expenses and costs;

WHEREAS, the parties have agreed to a settlement of this action;

670823_1

WHEREAS, the aforementioned parties desire to avoid further expense, time, effort and uncertainty in regard to this action;

WHEREAS, the pending litigation involves claims contested by the defendants, and defenses contested by the plaintiffs; and

WHEREAS, the parties now desire permanently and fully to settle, resolve and conclude the litigation and all disputes, claims and defenses which were or could have been included in the litigation without the burdens and expenses of further litigation and trial;

WHEREAS, the parties have conferred in good faith and agree that the pending litigation should be settled without the need for trial; and

WHEREAS, the parties acknowledge and agree that this Consent Decree is not intended to be, and shall not be construed or represented to be, evidence of, or an admission of liability, on the part of the defendants on any claim in the litigation; and

WHEREAS, this Consent Decree is understood by the parties to be an amicable resolution of genuinely disputed claims;

NOW THEREFORE, in consideration of the promises hereinbefore set forth, and the mutual and reciprocal covenants and agreements herein provided, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties, it is AGREED by the parties and ORDERED by the Court as follows:

I.  The defendants hereby represent to the plaintiffs that they have made the alterations or improvements specified below or that they shall cause the following alterations and improvements to be made to the property which is the subject of this

action, commonly known as the Best Western Adams Inn, 29 Hancock Street, Quincy, Massachusetts (referred to hereinafter as the "facility" or the "property" or the "hotel"):

A.   **PARKING AND INITIAL ACCESS INTO THE BUILDING**

(1)   There is a public sidewalk that runs along the front of the facility. The parties agree that the defendants shall establish a designated path of travel for individuals in wheelchairs who arrive along that sidewalk. Therefore, there shall be an accessible route complying with the ADA Accessibility Guidelines for Buildings and Facilities (hereinafter "ADAAG") within the boundary of the property from the public sidewalk to an accessible building entrance. The accessible route shall conform to the requirements of ADAAG 4.3

(2)   There are 166 total parking spaces available to the public at the facility. In compliance with ADAAG 4.1.2(5) the defendants shall have a minimum of six (6) disabled accessible parking spaces that comply with the location and dimensional requirements of ADAAG 4.6. and as illustrated by Figure 9 of the ADAAG. Each access aisle shall be no less than 60 inches in width (except as set forth in the following paragraph concerning a van accessible space). Additionally, and in accordance with 4.6.3 of the ADAAG, two accessible parking spaces may share a common access aisle. Each access aisle shall be striped diagonally to designate it as a no-parking zone. Accessible parking spaces shall be designated as reserved by a sign showing the symbol of accessibility (ADAAG 4.30.7). As of the date of this Consent Decree, there are three existing accessible spaces along the concrete walk in front of the facility (not including van accessible spaces). In order to increase the total number of accessible spaces to six (6), the defendants shall add three (3) accessible spaces on the side of the travel lane

3

directly opposite the three existing spaces. The new accessible spaces shall have access aisles no less than 60 inches in width. Two accessible parking spaces may share a common access aisle.

(3)     At least two (2) parking spaces shall be van accessible spaces having a 96-inch passenger- loading zone. The two van accessible spaces may share a common 96-inch passenger-loading zone. The van accessible parking spaces shall conform to ADAAG 4.1.2(5)(b) and shall have a sign bearing the words "Van-Accessible," mounted below the symbol of accessibility in compliance with ADAAG 4.6.4. The 96-inch passenger-loading zone shall have a curb cut that meets the requirements of ADAAG 4.7.

(4)     The defendants have modifed all existing curb cuts such that the slopes at either end of the flared sides of all curb cuts do not exceed 1:12.

(5)     The defendants intend to build a covered drop-off area at the main entrance of the facility. An accessible curb cut shall be installed at the main front entrance passenger loading/unloading zone as part of the intended work. The accessible curb cut shall comply with ADAAG 4.7. If the defendants do not build a covered drop-off area at the main entrance of the facility within 36 months of the effective date of this agreement, they shall install a an accessible curb cut at the main front entrance passenger loading/unloading zone.

    B.     **THE HOTEL INTERIOR**

(1)     The main guest registration counter shall have a 36" inch long section no higher than 36" from the finished floor in accordance with ADAAG 7.2(2). The defendants may have a flip down auxiliary counter or may modify a section of the existing counter to provide an accessible counter surface that is 36" inches in length and no higher than 36"

from the finished floor. Alternatively, the defendants may locate a desk in the guest registration area that conforms to the requirements of ADAAG 4.32.

(2) The doors of all public rooms within the hotel interior shall have Grade II Braille signs mounted as specified in ADAAG 4.30.

(3) The round door knobs on all doors to public rooms within the hotel interior shall be replaced with lever type handles in accordance with ADAAG 4.13.9.

(4) The ramp leading to The Adams Pub has handrails on one side only. The handrails are on the left side as one faces the Adams Pub entrance. The defendants shall modify the ramp by installing a handrail on the right side in accordance with ADAAG 4.8.5.

(5) There are steps at the main entrance to The Adams Café. At a nearby entrance to The Adams Café there is a ramp allowing wheelchair access. The defendants shall install a sign at the main entrance directing persons with disabilities to the nearby wheelchair accessible entrance.

(6) The defendants are planning construction to make the ramped entrance to The Adams Café the main entrance to the dining area. In the course of that construction, the defendants shall make sure that the ramp meets all of the requirements of ADAAG 4.8.

(7) There are house phones throughout the facility. They are positioned on walls higher than 54 inches from the finished floor. The defendants shall reposition the phones no higher than 48 inches above the finished floor as ADAAG 4.1, 4.2, and 4.27.

(8) The sign on the men's rest room is mounted on the door. The defendants shall reposition the sign [to comply with ADAAG 4.1.2(7)(d) and 4.30.6] on the wall on the latch side of the door. If there is no wall space on the latch side of the door, the sign shall

5

be placed on the nearest adjacent wall. The sign shall be mounted 60 inches above the finish floor to the centerline of the sign.

(9)     The toilet paper dispenser in the men's rest room that is available to the public is positioned above the grab bar in the accessible toilet stall. The toilet paper dispenser shall be mounted below the grab bar as shown in Figure 29 of the ADAAG.

(10)    The coat hook in the men's rest room is mounted above 54 inches from the finish floor. The defendants shall lower this coat hook to a height no greater than 48 inches above the finish floor or the defendants shall install a second coat hook in an alternate location at a height no greater than 48 inches above the finish floor.

(11)    The bottom rim of the wall-hung urinal in the men's rest room is 22 inches above the finish floor. The defendants shall lower the urinal such that the bottom rim is at a height of no more than 17 inches above the finish floor as required by ADAAG 4.18.2.

(12)    The distance from the finish floor to the bottom of the sink apron in the men's room is 27 ¼ inches. The sink apron shall be modified to provide a knee clearance for persons in wheelchairs so that the bottom of the apron is at least 29 inches above the finish floor as required by ADAAG 4.19.2 and as shown in Figure 31 of the ADAAG.

(13)    The defendants shall insulate the sink pipe under the sink apron in the men's rest room as required by ADAAG 4.19.4.

(14)    The sign on the women's rest room that is available to the public is mounted on the door. The defendants shall reposition the sign to [comply with ADAAG 4.1.2(7)(d) and 4.30.6] on the wall on the latch side of the door. If there is no wall space on the latch side of the door, the sign shall be placed on the nearest adjacent wall. The sign shall be mounted 60 inches above the finish floor to the centerline of the sign.

(15) The toilet paper dispenser in the women's rest room is positioned above the grab bar in the accessible toilet stall. The toilet paper dispenser shall be mounted below the grab bar as shown in Figure 29 of the ADAAG.

(16) The defendants shall install a coat hook in the women's restroom at a height no greater than 48 inches above the finish floor.

(17) The distance from the finish floor to the bottom of the sink apron in the women's restroom is 27 ¼ inches. The sink apron shall be modified to provide a knee clearance for persons in wheelchairs so that the bottom of the apron is at least 29 inches above the finish floor as required by ADAAG 4.19.2 and as shown in Figure 31 of the ADAAG.

(18) The defendants shall insulate the sink pipe under the sink apron in the women's rest room as required by ADAAG 4.19.4.

(19) The defendants shall install a sign at the Fitness Center door that complies with ADAAG 4.1.2(7)(d) and 4.30.6. The sign shall be on the wall on the latch side of the door. The sign shall be mounted 60 inches above the finish floor to the centerline of the sign.

(20) There is a television in the Fitness Center. The defendants shall ensure that the television in the Fitness Center is capable of displaying closed captioning, to the extent that the broadcast received by the television includes closed captioning, during all hours of operation when the television is turned on.

(21) The defendants shall install a sign at the game room door that complies with ADAAG 4.1.2(7)(d) and 4.30.6. The sign shall be on the wall on the latch side of the door. The sign shall be mounted 60 inches above the finish floor to the centerline of the sign.

(22)   There is a display case mounted on a wall in a hallway of the common area of the hotel interior. This is a protruding object within the meaning of ADAAG 4.4.1. The defendants shall place a permanent object under the display case within the cane detection area to prevent a visually impaired person from walking into the protruding display case.

      C.    **OUTDOOR RECREATION AREA/POOL AREA**

(1)   The decks in the pool area shall be modified so that there is ramped access to all areas wherever there is a currently a step or steps to different levels of the deck. The ramps shall conform to the requirements of ADAAG 4.8.2.

(2)   In all areas of public seating in the outdoor recreation/pool area, the defendants shall have at least one wheelchair accessible table that meets the requirements of ADAAG 4.32.3 in regard to knee clearances.

(3)   The defendants shall install handrails on both sides of the ramp leading to the pool area as required by ADAAG 4.8.5.

      D.    **LAUNDRY ROOM**

(1)   There is less than the required 18 inches of latch side clearance for a wheelchair user to approach the laundry room door and be able to reach the door handle and open the door to the laundry room. The defendants shall modify the corridor to meet the requirements for minimum maneuvering clearances specified in ADAAG 4.13.6 or the defendants shall install an automatic or power assisted door that complies with ADAAG 4.13.12.

(2)   The defendant shall relocate the trash receptacle in the laundry room so that it does not obstruct the approach of a wheelchair user to the soap vending machines. There

shall be a clear 30 inch by 48 inch area for a wheelchair users to approach and use the vending machines as required by ADAAG 4.1 and 4.2.

(3)　All door thresholds in the laundry area shall be modified to comply with ADAAG 4.5.2.

### E. **ACCESSIBLE GUEST ROOMS**

(1)　The hotel has a total of 99 guest rooms comprised of King Bed rooms, Double Bed rooms, and Suites. Currently, two rooms are designated as wheelchair accessible. These are rooms 118 and 120. The defendant shall increase the total number of accessible rooms to a minimum of 5. One accessible room shall have a roll-in shower that conforms to the dimensions of Figure 57 of the ADAAG. The defendants intend to begin an addition project in the fall and winter of 2005-2006. One new handicapped accessible room shall be added during this addition project. The defendants shall add to the facility two more handicapped accessible guest rooms in the course of renovations that will be performed in the winters of 2006-2007 and 2008-2009. During those renovation and addition projects, the defendants will be completely renovating all of the rooms in the third, second, and first floors, respectively. In any event, whether or not the renovations and addition are undertaken and completed as planned, the defendants shall add three handicapped accessible guest rooms to the facility no later than December 31, 2009.

(2)　The accessible guest rooms shall be dispersed among the various classes of accommodations in accordance with ADAAG 9.1.4.

(3)　In addition to the five wheelchair accessible rooms, four guest rooms shall be made accessible for persons with hearing impairments in accordance with ADAAG 9.1.3.

Such guest rooms shall have visual fire alarms and notification devices and volume controls on permanently installed telephones in conformity to ADAAG 9.3. Additionally, there shall be an accessible electrical outlet within four feet of a telephone connection to facilitate the use of a portable text telephone or "TTY."

(4) In accordance with ADAAG 9.2.2(1), wherever one bed is provided in a wheelchair accessible room, the defendants shall ensure that there is a clear maneuvering space of at least 36 inches in width on both sides of the bed.

(5) In accordance with ADAAG 9.2.2(1), wherever two beds are provided in a wheelchair accessible room, the defendants shall ensure that there is at least 36 inches of maneuvering space between the beds. The requirement for an accessible route to accessible elements within the room may, in some instances, require a 36-inch clearance on the other sides of the beds.

(6) In accordance with ADAAG 9.2.2(2), the defendants shall provide an accessible route at least 36 inches wide connecting all accessible spaces and elements, including telephones, within all guest rooms designated as wheelchair accessible.

(7) In accordance with ADAAG 9.2.2(5), the defendants shall ensure that all operable controls (e.g., thermostats and light switches), dispensers, receptacles and operable equipment in wheelchair accessible rooms are within clear floor space (ADAAG 4.2.4) that allows a person using a wheelchair to make a forward or parallel approach. (ADAAG 4.27.2). Operable controls, including the wands used to open and close curtains, shall be within the maximum high forward reach height of 48 inches as set forth in ADAAG 4.2.5 and as illustrated in Figure 5(a) of the ADAAG.

(8)    The defendants shall cause Grade II Braille to be mounted on the walls adjacent to the latch side of all accessible guest room doors in compliance with ADAAG 4.1 and 4.30.

In accordance with ADAAG 9.2.2(3) and ADAAG 4.13.5, all doors and doorways designed to allow passage into and within all sleeping rooms shall have a minimum clear opening of 32 inches with the door opened to 90 degrees, measured between the face of the door and the opposite stop.(10)    The defendants shall cause the knobs on all doors (including closet doors) within wheelchair accessible guest rooms to be replaced with levers or handles which can be operated with one hand and which do not require tight grasping, pinching or twisting of the wrist in compliance with ADAAG 4.13.9 and ADAAG 4.27.4.

(11)    The defendants shall cause the knobs on the drawers of all dressers within wheelchair accessible guest rooms to be replaced with levers or handles which can be operated with one hand and which do not require tight grasping, pinching or twisting of the wrist in compliance with ADAAG 4.27.4.

(12)    The defendants shall cause the drawers of all desks within wheelchair accessible guest rooms to have levers or handles which can be operated with one hand and which do not require tight grasping, pinching or twisting of the wrist in compliance with ADAAG 4.27.4.

(13)    In all wheelchair accessible guest rooms, the defendants shall provide desks that have a minimum of 27 inches of clear vertical space and 30 inches of clear horizontal space beneath such desks in compliance with ADAAG 4.32.3.

(14)   The light fixtures and lamps in all wheelchair accessible rooms shall be replaced with touch-sensitive light fixtures and lamps which can be operated with one hand and which do not require tight grasping, pinching or twisting of the wrist in compliance with ADAAG 4.27.4.

(15)   Coat hooks on doors and/or walls in all wheelchair accessible rooms shall be relocated, or a redundant hook shall be installed as necessary, to a maximum height of 48 inches above the finish floor where a clear floor space of 30 inches minimum by 48 inches minimum is positioned for an obstructed forward approach in accordance with Figure 4(b) of the ADAAG, or 54 inches maximum above the finish floor where a clear floor space is positioned for an unobstructed parallel approach in accordance with Figure 4(c) of the ADAAG, in compliance with ADAAG 4.27.3.

(16)   Closet racks and shelves in all wheelchair accessible rooms, when occupied by a person in a wheelchair, shall be lowered to a maximum high forward reach of 48 inches in compliance with ADAAG 4.2.5 and 4.2.6.

(17)   Controls for flush valves on toilets within wheelchair accessible guest rooms shall be mounted on the wide side of toilet areas no more than 44 inches above the floor in compliance with ADAAG 4.27.4.

(18)   All roll-in showers in wheelchair accessible guest rooms shall comply with the dimensions shown in Figure 57(a) of the ADAAG and as required by ADAAG 9.1.2.

(19)   All roll-in showers in wheelchair accessible guest rooms shall have fixed seating as shown in Figure 57(a) of the ADAAG and as required by ADAAG 9.1.2.

(20)   All roll-in showers in wheelchair accessible guest rooms shall have shower spray units mounted in a location creating a maximum side reach of 54 inches pursuant to ADAAG 4.2.6.

(21)   Wheelchair accessible bathtubs shall have water controls at the foot end of the tubs in accordance with Figure 34 of the ADAAG.

(22)   All exposed sink pipes in all wheelchair accessible guest rooms shall be insulated pursuant to ADAAG 4.19.4.

(23)   All towel racks and/or storage shelves within wheelchair accessible rooms shall be mounted in a location creating a maximum forward reach of 48 inches pursuant to ADAAG 4.2.5 and a maximum side reach of 54 inches pursuant to ADAAG 4.2.6.

(24)   Pursuant to ADAAG 4.19.2, the sink counters in the bathrooms of all wheelchair accessible rooms shall be mounted with the rim or counter surface no higher than 34 inches above the finish floor and shall provide a clearance of at least 29 inches above the finish floor to the bottom of the apron. There shall be a minimum clear depth of 8 inches (for knee clearance) beneath the counter.

(25)   The grab bars adjacent to all toilets in wheelchair accessible rooms shall comply in regard to dimensions and positioning with Figures 29 and 30 of the ADAAG and ADAAG 4.26.

(26)   Toilet seats in wheelchair accessible rooms shall not be mounted more than 18 inches from the side wall.

F.   **MISCELLANEOUS**

(1)   The parties agree that time is of the essence in all respects regarding this Consent Decree. Therefore, the defendants shall make reasonable efforts to complete the

alterations and modifications required under this Consent Decree by January 27, 2007, [except as provided in Paragraph E (1) above] provided that the defendants may extend the period for additional time, if needed, with the plaintiffs' assent to the additional time requested. The plaintiffs shall not unreasonably withhold their assent and stipulation.

(2)   The defendants shall take all necessary steps to obtain the appropriate permits from the City of Quincy in time to complete all work required by this Consent Decree within the deadlines established hereby.

(3)   In the event that plaintiffs shall obtain an order of the Court that defendants have breached any material term of this Consent Decree, defendants shall pay the reasonable attorneys' fees and costs expended by plaintiffs to enforce this Consent Decree.

(4)   The defendants agree that monetary damages are inadequate to compensate the plaintiffs for any breach of this Consent Decree. Accordingly, the parties agree that in the event that the alterations and modifications required by this Consent Decree are not timely completed by January 27, 2007 (or within any extension of time to which the parties may agree and except as otherwise specified above) the plaintiffs shall have the right to petition the Court for payment by the defendants of liquidated damages in the amount of $150.00 per day until said alterations and modifications are complete. The appropriate amount to be awarded will be determined by the Court in relation to the severity of the defendants' non-compliance and breach. The plaintiffs shall be entitled to an award of those damages and to obtain injunctive relief from the Court to compel compliance with the terms of this Consent Decree. Additionally, in the event the modifications and alterations are not completed by June 30, 2006 (or within any extension of time to which the parties may agree), the defendant shall pay all additional

attorneys' and expert's fees and costs incurred by the plaintiffs subsequent to the execution and docket entry of this Consent Decree.

(5)    Under Count II and Count III of the *First Amended Complaint and Jury Demand*, the plaintiffs seek compensatory and exemplary damages for their injuries. The defendants deny that they are liable to pay such damages to the plaintiffs. The plaintiffs also seek an award of attorneys' fees and case expenses, including expert costs, under all three Counts of the *First Amended Complaint and Jury Demand*. The defendants deny that they are liable to pay such attorneys' fees and costs to the plaintiffs.

(6)    The parties' settlement of the plaintiffs' claims for damages, attorneys' fees, and costs shall be the subject of a separate letter agreement and shall remain confidential. The separate letter agreement shall not be disclosed to anyone other than the attorneys and accountants of the parties to this Consent Decree, except by express written consent of the parties to this Consent Decree or as required by law, as required to enforce the terms of this Consent Decree or pursuant to an order of any Court.

(7)    Neither this Consent Decree, nor any notice of it shall be recorded in any Registry of Deeds.

(8)    In consideration of the separate letter agreement referenced in the preceding paragraph and in consideration of the actions undertaken or to be undertaken by the defendants under the terms of this Consent Decree, the plaintiffs, individually and jointly, their past, present and future officers, directors, employees, agents, attorneys, partners, principals, subsidiaries, affiliates, divisions, parents, predecessors, successors, heirs, members and assigns, hereby release and forever discharge defendants, jointly and severally, their past, present and future officers, directors, trustees, beneficiaries,

employees, agents, attorneys, partners, principals, subsidiaries, affiliates, divisions, parents, predecessors, successors, heirs and assigns, from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, executions, claims and demands whatsoever, in law or equity, whether known or unknown, foreseen or unforeseen, that plaintiffs have ever had, or hereafter can, shall, or may have, against defendants, including under Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, *et seq.*, the Massachusetts General Laws, from the beginning of the world to the date of this Consent Decree.

(9)     The parties further acknowledge, represent, covenant and warrant that the obligations imposed by this Consent Decree shall be forever binding, and that this Consent Decree may not be modified, amended, annulled, rescinded or otherwise changed unless in writing signed by authorized representatives of the plaintiffs and the defendants, which expressly refers to this Consent Decree. Substantive changes to this Consent Decree must be endorsed by the court. Agreed upon extensions of deadlines for completion of work required hereunder shall be confirmed in writing by the parties; such extensions of time used need not be endorsed by the Court.

(10)     The plaintiffs acknowledge, represent, covenant and warrant that the plaintiffs, individually or jointly, have not made any assignment of any right, claim, or cause of action covered by this release to any individual, corporation, or any other legal entity whatsoever.

(11)     The parties understand and agree that this Release does not apply to any alleged breaches of this Consent Decree.

(12)    The parties stipulate and represent that they have the power and authority to execute and deliver this Consent Decree and to perform its obligations hereunder.

(13)    The parties also shall file a joint notice indicating that the matter has been settled and requesting that the matter be dismissed, with prejudice, subject to the Court retaining jurisdiction only for enforcement purposes, if necessary.

(14)    This Consent Decree shall become effective as of the date that all of the signatories have signed the Consent Decree and the date when the Court has endorsed it as an order of the Court.

(15)    The Consent Decree shall be legally binding upon the defendants only so long as they hold legal title to or manage the premises. The defendants shall inform any and all prospective buyers or prospective managers of the premises of the existence of this Consent Decree and the extent to which the defendants fulfilled or did not fulfill their obligations hereunder.

(16)    Except to enforce this Consent Decree, the plaintiffs will not, during the period of the defendants' performance under this Consent Decree, make any claims, complaints, or

charges against the defendants in any court or governmental agency on account of alleged violations at the premises of Title III of the Americans With Disabilities Act (and the cognate Massachusetts law); Article 114 of the Massachusetts Constitution; Chapter 272, section 98, of the Massachusetts general laws; or Chapter 98, section 103, of the Massachusetts General Laws. Nor will the plaintiffs aid, assist, or encourage the bringing of any such claims against the defendants on account of conditions at the premises during such time.

*Nicholas S. Guerrera (under POA for A. O'Beirne — attached).*

Amylee O'Beirne in her capacity as President,
Access with Success, Inc.
Dated:

_____
Felix Esposito, Plaintiff
Dated: 10/4/05


29 HANCOCK STREET, LLC

By: _____
As Authorized Representative
Dated: Sept. 22, 2005

ADAMS INN FACILITIES, INC.

By: _____
As Authorized Representative
Dated: Sept. 22, 2005


**So Ordered by the Court:**

_____
District Judge, United States District Court,
District of Massachusetts
Dated: Oct 14, 2005

## POWER OF ATTORNEY

KNOW ALL PERSONS that I, Amylee O'Beirne, in my capacity as President of Access with Success, Inc., hereby grant to my attorneys, Nicholas S. Guerrera, of Shaheen Guerrera & O'Leary, LLC, Jefferson Office Park, 820A Turnpike Street, North Andover, Massachusetts, 01845 full power and authority to prepare, endorse, execute and file on my behalf, all complaints, claims, contracts, drafts, settlement agreements, consent decrees, and other documents which, in his opinion are necessary in connection with the prosecution and resolution of the Title III ADA cases in which Access with Success, Inc, is named as a plaintiff.

_[signature]_
Amylee O'Beirne
Dated: 9/20/05